FILED
2010 Jul-01  AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

**GWENDOLYN D. SIMMONS,**

>  **Plaintiff,**

**v.**                                                        **Case No.: 09-CV-2028-IPJ**

**MICHAEL J. ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY ADMINISTRATION**

>  **Defendant.**

## <u>MEMORANDUM OPINION</u>

The plaintiff, Gwendolyn Simmons,[1] brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the Social Security Administration's ("the Commissioner") denial of plaintiff's application for disability insurance benefits and supplemental security income.

Plaintiff filed her applications for benefits alleging a disability onset of October 13, 2003, later amended to November 11, 2005,[2] due to problems with

---

[1]Although the record shows the plaintiff's name as both Grendolyn D. Simmons and Gwendolyn D. Simmons, the court's opinion and order shall reflect the latter.

[2]November 11, 2005, was several days after plaintiff's applications for benefits had been denied in a prior proceeding.  (R. 34-40).

phlebitis, high blood pressure, and lower back pain.   (R. 69, 77, 357).  Her

applications were denied by an Administrative Law Judge ("ALJ") on December

9, 2008, (R. 17-28), and because the Appeals Council denied plaintiff's request for

review, the ALJ's determination became the final decision of the Commissioner.

(R. 6).

The only function of this court is to determine whether the Commissioner's

decision is supported by substantial evidence and whether proper legal standards

were applied.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).  Substantial evidence is

"evidence that must do more than create a suspicion of the existence of the fact to

be established . . . and such relevant evidence as a reasonable person would accept

as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995) (citations omitted).  The plaintiff argues that the ALJ makes three

findings that are not supported by substantial evidence.

1.  The Medical Opinions of Drs. Lloyd Johnson, Allan Goldstein, and Frank
Gillis

The plaintiff argues that substantial evidence does not support the ALJ's

finding that the opinions of Drs. Lloyd Johnson and Allan Goldstein should be

given little weight, and the opinion of Dr. Frank Gillis should be given great

weight.  An ALJ is required to consider multiple factors when evaluating a
medical source opinion, including the examining and treatment relationship
between the physician and patient, the support a physician's opinion is given by
the medical evidence, the consistency of a physician's opinion with the record as a
whole, the specialization of the physician, and "other factors."  20 C.F.R. §
416.927(b), (d).

The ALJ articulated good cause for giving little weight to the opinions of
Drs. Johnson and Goldstein.  Although there exists some medical evidence in the
record that the plaintiff has "a little lumbar spondylosis" (R. 137, 204, 206-207)
and "marked degenerative disk disease" (R. 137), the majority of the evidence
supports the ALJ's decision, and a reasonable person would accept this evidence
as adequate to support the ALJ's decision.

First, the treating and examining relationship between Drs. Johnson and
Goldstein, and the plaintiff lend support to the ALJ's decision to give their
opinions little weight.  Dr. Johnson, an orthopedic surgeon, examined the plaintiff
only once, and Dr. Goldstein, an internist, never examined the plaintiff.  (R. 344,
347, 455).  Dr. Goldstein, however, explicitly states that "the evaluation by Dr.
Johnson done April 22nd of this year correlates extremely well with [the plaintiff's]
complaints."  (R. 456).  Dr. Goldstein hypothesizes that her treating physicians

were not "adamant" about diagnosing the plaintiff because no CT scan or MRI "show[ed] actual compression of nerves" and that based on plaintiff's spondylosis, he would have diagnosed the plaintiff differently. (R. 457). The fact of the matter is Dr. Goldstein had no treating or examining relationship with the plaintiff, and the record is replete with at least ten examining physicians who do not give any "adamant" or determinative diagnosis for plaintiff's complaints.

Second, the medical evidence and record as a whole do not support Drs. Johnson and Goldstein's opinions. In January of 2004, a CT scan of the plaintiff's lumbar spine revealed that the plaintiff's spine was normal. (R. 229). On August 20, 2007, Dr. Robert Rausch performed an MRI of the lumbar spine, and interpreted it as follows: "The vertebral body height and alignment are normal. The bone marrow signal is normal. The disc spaces are normal. No evidence of a herniated disc or spinal stenosis. Minimal facet joint arthritis. Impression: Within normal limits for age." (R. 199). In January of 2008, an exam by Dr. Thomas Norman found no evidence of spondylolysis or spondylolisthesis. (R. 242). During seven exams throughout 2008, a certified registered nurse practitioner found the plaintiff had "normal gait and station; . . . normal structure and appearance of the head, neck, spine, ribs, pelvis and all extremities; full range of motion of the head, neck, spine, ribs, pelvis and all extremities; normal stability,

4

muscle strength and tone of the head, neck, spine, ribs, pelvis and all extremities."
(R. 336-37, 332-333, 328-329, 324-325, 320, 314-315, 311).

The objective medical evidence includes a CT scan of the plaintiff's right
leg showing no definite abnormality and muscles with normal density on
December 19, 2003, (R. 231); a CT of the plaintiff's lumbar spine that was normal
on January, 12, 2004, (R. 229); an x-ray revealing degenerative disc disease at L3-
4 and L4-5, showing "[l]ipping osteophytes . . . seen at L3-4 and L4-5 without
significant disc space narrowing at these two levels [with] no evidence of fractures
of any of the visualized skeletal elements" on January 5, 2006, (R. 166); an MRI
that revealed "a little spondylosis" on November 13, 2006, (R. 207); an MRI that
revealed a normal lumbar spine on August 20, 2007, (R. 199); and an x-ray
showing three views of plaintiff's normal lumbar spine on January 16, 2008, (R.
242).  Ultrasounds of the venous structures of the right leg performed by four
different doctors on January 9, 2005, December 1, 2005, March 28, 2006, and
November 27, 2006, showed no evidence of deep vein thrombosis.  (R. 174, 141,
145, 204).  A fifth doctor found no evidence of deep vein thrombosis on August 5,
2005, and on May 26, 2004, January 6, 2005, January 9, 2005, and April 11, 2005,
examinations of the plaintiff revealed no evidence of thrombosis.  (R. 169-171,
174-175).  Finally, on multiple occasions, doctors stated that they did not know

what was causing the pain alleged by the plaintiff.  (R. 197, 204, 230).

While this evidence does not support the medical opinions of Drs. Johnson and Goldstein, it does give credence to Dr. Gillis' opinion.  The ALJ placed "great weight" on the opinion of Dr. Frank Gillis, the disability examiner, because it was consistent with the weight of the evidence.  Dr. Gillis found that the plaintiff could fully squat and rise without assistance and was able to heel to toe walk without balance problems.  The plaintiff had no tenderness or spasms in her back, and she was able to get on and off the exam table without any difficulty.  Dr. Gillis did not place any type of functional restrictions on the patient after reviewing her medical records and examining her.  (R. 146-148).

Considering all of the evidence in the record, which the court has carefully considered, the court finds that substantial evidence supports the ALJ's decision to give Drs. Johnson and Goldstein's opinions little weight and to give Dr. Gillis' opinion great weight.

## 2.  The Residual Functional Capacity Determination

The plaintiff also contends that the ALJ inappropriately determined the plaintiff's residual functional capacity (RFC) because it was not based on the functional limitations proposed by a physician.  However,

some issues are not medical issues regarding the nature and severity

of an individual's impairment(s) but are administrative findings that
are dispositive of a case. . . .  The following are examples of such
issues: . . . What an individual's RFC is. . . .  The regulations provide
that the final responsibility for deciding issues such as these is
reserved to the Commissioner. Giving controlling weight to [treating
source opinions] would, in effect, confer upon the treating source the
authority to make the determination or decision about whether an
individual is under a disability, and thus would be an abdication of
the Commissioner's statutory responsibility to determine whether an
individual is disabled.

SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e). Thus, the ALJ properly exercised his responsibility in determining that

the plaintiff could "perform light work . . . except with a sit/stand [option] and

limited to occasional ramps/stairs, never work on ladders/ropes/scaffolds, and no

work around hazardous machines."  (R. 23).

In making his RFC determination, the ALJ reviewed the entire record,

including the medical opinions of Drs. Johnson and Goldstein, which he gave little

weight; the medical opinion of Dr. Gillis, which he gave great weight; the

plaintiff's testimony that she could stand for two hours and sit for 3 hours in a day,

has twenty-five foot cramps each day, (R. 445, 450); and the dozens of treatment

notes and medical records submitted by various medical providers.  While Drs.

Johnson and Goldstein restricted the plaintiff from "prolonged sitting, standing, or

overhead activity" but stated she could "use her hands and arms" and "hear, speak,

and travel," Dr. Gillis found that the plaintiff was not limited at all.  (R. 235, 148).

7

Moreover, none of the other nine doctors who treated the plaintiff recommended that she be limited from work, except for Dr. Yoder who treated the plaintiff in 2003 for phlebitis, which multiple subsequent ultrasounds confirm is no longer existent.  (R. 233).  In addition, during a visit to Memorial Hospital on December 24, 2007, for "blackouts" caused by plaintiff's poorly controlled blood pressure, the plaintiff noted that she had a busy life taking her mother to the doctor and having two children living at home.  (R. 283, 286).  But Dr. Gary Hester noted the plaintiff suffered from pain of an unknown etiology.  (R. 197, 202, 204, 207, 213). Dr. Ashley Burchfield noted back and leg pain and recommended use of a heating pad and back exercises.  (R. 133, 134, 179, 183).  Dr. Marc Hinrichs noted normal muscle density of the plaintiff's right leg.  (R. 231).  Considering this evidence and the record as a whole, sufficient evidence exists to allow a reasonable person to accept the decision that the plaintiff could perform light work but would need to alternate between sitting and standing, and would be limited to occasional ramps and stairs; never work on ladders, ropes, and scaffolds; and not work around hazardous machines.

3.  The Intensity, Persistence, and Limiting Effects of Her Symptoms

Lastly, the plaintiff contends that the ALJ's rejection of her statements concerning the intensity, persistence, and limiting effects of her symptoms is not supported by substantial evidence.  To establish that she is disabled because of

8

pain, the plaintiff must show: (1) evidence of an underlying medical condition and (2) either (a) "objective medical evidence that confirms the severity of the alleged pain arising from that condition or [(b)] the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foote*, 67 F.3d at 1560; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) ).

The medical findings discussed above constitute substantial evidence supporting the ALJ's conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23, 24). The cases cited by plaintiff for the proposition that her "little spondylosis" and degenerative disc disease without significant disc space narrowing establish that the objective medical evidence comports with the claimant's subjective statements of pain contain claimants who are diagnosed with conditions grossly dissimilar from the plaintiff's. *See e.g.*, *Hale v. Bowen*, 831 F.2d 1007, 1011-12 (11th Cir. 1987) (cervical nerve root compression, scoliosis, degenerative disc disease, and cervical spondylosis, and "an additional psychological element to [the claimant's] condition, which [a physician] believed made her disability considerable," and several failed back operations could produce claimant's alleged pain); *Kent v. Sullivan*, 788 F.Supp. 541, 542 (N.D.

Ala. 1992) (post anterior fusion at L4-L5 with moderate hypertrophic changes of the facet joints at this level; two bulging discs, one with definite evidence of herniation and the other with evidence of scoliosis;  a surgically repaired right knee that required another surgery due to postoperative infection; osteoarthritis of the knee with advanced cartilage loss and mild lateral subluxation of the tibia; a ligament tear of the knee; and a virtual absence of mid portion of medial meniscus confirmed by CT scan or MRI was sufficient objective evidence to confirm subjective complaints of pain).

## CONCLUSION

Based upon the court's evaluation of the evidence submitted to and adduced at the hearing before the ALJ and considered by him, the court is satisfied that the decision of the ALJ is based upon substantial evidence.  Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 30th day of June 2010.


_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE